United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 27, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-20037
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE DE JESUS GARCIA-FLORES;
ORLANDO ACOSTA-GARCIA,

Defendants-Appellants.

---------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CR-257-1
---------------------

Before REAVLEY, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

Jose De Jesus Garcia-Flores (Garcia) and Orlando Acosta-Garcia (Acosta) appeal their convictions and sentences imposed for conspiracy to harbor and transport undocumented aliens and five counts of aiding and abetting the harboring of undocumented aliens for financial gain. Garcia and Acosta were each sentenced to a term of imprisonment of 27 months on each count to be followed by three-year terms of supervised release, all terms to run concurrently.

_____

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Acosta argues that the Government failed to prove that he was involved in the smuggling conspiracy. Viewed in the light most favorable to the verdict, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Acosta aided or abetted or agreed to participate in a conspiracy among smugglers to transport illegal aliens into the United States for financial gain and that Acosta concealed, harbored and shielded the aliens from detection after they arrived in the country. Jackson v. Virginia, 443 U.S. 307, 319 (1979); 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(I),(II), (B)(ii).

The evidence that Acosta assisted the aliens in bypassing the Border Patrol checkpoint reflected Acosta's knowledge that he was harboring aliens who were illegally in this country. The evidence further showed that Acosta gave the aliens directions about how not to be detected and provided the aliens with food, water, and medication. The evidence showed that the aliens had to provide payment for the smuggling assistance. The testimony concerning Acosta's involvement in the scheme provided by Alfredo Gordillo-Gonzalez, who voluntarily returned to the United States to testify, was corroborated by Dilican Yadira Moncada-Cornejo's and Jose Trinidad Ramos' versions of the events. The evidence was sufficient for a reasonable jury to determine beyond a reasonable doubt that Acosta conspired and aided and abetted in the harboring of undocumented aliens.

Garcia argues that the evidence was insufficient to support his conviction for count six, harboring an undocumented alien, Sonia Maricela Lopez-Cortez, because the Government failed to prove beyond a reasonable doubt that Lopez-Cortez was an undocumented illegal alien. Under the concurrent sentencing doctrine, "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." United States v. Ware, 282 F.3d 902, 906 (5th Cir. 2002) (internal quotations and citation omitted). Garcia received concurrent 27-month sentences on all counts. Because the assessments imposed pursuant to 18 U.S.C. § 3013(a)(2)(A) were remitted, this court need not address Garcia's argument that the evidence was insufficient to support his conviction under count six, aiding and abetting in the harboring and concealing of Lopez-Cortez. Id.

Garcia argues that the district court committed reversible error in admitting testimony over objection that a caller who identified himself as "Chuy," Garcia's nickname, asked Lopez-Cortez's aunt for money to obtain her niece's release. He argues that the district court erroneously admitted the caller's statement as a coconspirator's statement pursuant to FED. R. EVID. 801(d)(2)(E) because the Government failed show who the caller was and that he was a coconspirator.

Statements made by a coconspirator of a party during the course of and in furtherance of the conspiracy are not hearsay. FED. R. EVID. 801(d)(2)(E). It can be inferred that the telephone call was made by someone involved in the smuggling conspiracy in furtherance of the goal to obtain payment for providing the service. However, the Government did not provide any direct evidence that the caller was Garcia or any other specific person involved in the conspiracy. Thus, the district court abused its discretion in admitting the testimony. See United States v. McConnell, 988 F.2d 530, 533-34 (5th Cir. 1993). However, the error was harmless because there was overwhelming evidence of Garcia's guilt and, thus, the jury decision was not substantially affected by the admission of the evidence of the telephone conversation. See United States v. Williams, 957 F.2d 1238, 1243 (5th Cir. 1992).

The district court did not abuse its discretion in admitting the testimony of Lopez-Cortez's aunt that Lopez-Cortez was from El Salvador and was not a United States citizen because one's reputation among one's family concerning personal or family history is an exception to the hearsay rule. FED. R. EVID. 803(19); United States v. Jean-Baptiste, 166 F.3d 102, 110 (5th Cir. 1999). Further, there was other credible evidence presented that Lopez-Cortez was an undocumented alien and, thus, any error in the admission was harmless.

Garcia argues that the district court committed reversible error in dismissing two alternate jurors at random in the absence of and without notice to the defendants. He argues that FED. R. CRIM. P. 24 requires the court to replace jurors with alternate jurors in the same sequence in which the alternates were selected. He contends that counsel exercised his peremptory challenges and made his closing argument based on the assumption that the individuals toward the end of the venire were not likely to serve on the jury. Garcia further argues that the dismissal of the jurors in the absence of the parties violated his right under FED. R. CRIM. P. 43 to be present at every trial stage, including jury impanelment. Acosta adopts by reference this argument as presented by Garcia pursuant to FED. R. APP. P. 28(i).

FED. R. CRIM. P. 24(c)(2)(B) provides that "Alternate jurors replace jurors in the same sequence in which the alternates were selected." Although this court has not addressed this specific issue, other circuits have determined that the random selection of alternate jurors is a violation of Rule 24 but that a harmless error analysis should be conducted if a violation occurs. See United States v. Sogomonian, 247 F.3d 348, 352 (2d Cir. 2001); United States v. Delgado, 350 F.3d 520, 523 (6th Cir. 2003); United States v. Brewer, 199 F.3d 1283, 1286 (11th Cir. 2000). FED. R. CRIM. P. 43 guarantees a defendant the right to be present during all stages of the trial, including jury impanelment. However, if a violation of Rule 43 occurs because the defendant and counsel are

not present and have no opportunity to object, the defendant must show that he suffered actual prejudice in order to obtain a reversal.  See United States v. Bieganowski, 313 F.3d 264, 293-94 (5th Cir. 2002), cert. denied, 538 U.S. 1014 (2003).

Even if violations of FED. R. CRIM. P. 24(c)(2)(B) and FED. R. CRIM. P. 43 occurred, Garcia and Acosta have failed to show that they suffered any actual prejudice as a result of the errors. Garcia and Acosta were afforded the opportunity to meaningfully exercise their peremptory strikes and have not shown what different action their counsel would have taken if they had been aware that the alternate jurors would be randomly selected.  The random selection of the alternate jurors is not reversible error.

Garcia argues that the district court plainly erred in prohibiting his use of any recreational drugs, alcohol, or tobacco products as a condition of supervised release because the conditions have no relationship to his smuggling offense and there was no indication that he had abused drugs, alcohol, or tobacco. Acosta adopts this argument pursuant to FED. R. APP. P. 28(i).

The special conditions of supervised release were not reasonably related to the alien smuggling offenses.  The general conditions of supervised release contained in the judgments prohibit the excessive use of alcohol and the possession, use, or distribution of unprescribed controlled substances.  The district court plainly erred in adding the special conditions precluding any

use of alcohol and tobacco by Garcia and Acosta. See United States v. Ferguson, 369 F.3d 847, 852-54 (5th Cir. 2004). Those conditions of supervised release are vacated and the case remanded for resentencing with respect to those conditions of supervised release.

Acosta argues that the district court plainly erred in sentencing him over the statutory maximum in violation of United States v. Blakely, 124 S. Ct. 2531 (2004). He contends that his offense level was increased by six levels above the statutory maximum based on information in the presentence report that he had transported twenty-seven illegal aliens when he had been charged with smuggling only five aliens into the United States.

Because Acosta did not raise this issue in the district court, this court reviews the argument for plain error. See United States v. Mares, 402 F.3d 511, 520-21 (5th Cir. 2005), petition for cert. filed, No. 04-9517 (U.S. Mar. 31, 2005). In United States v. Booker, 125 S. Ct. 738, 756 (2005), the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker applies to this direct appeal. 125 S. Ct at 769.

In Mares, this court applied the plain error standard to a Booker claim and held that under the third prong of the test, an

error that affects substantial rights, "the proponent of error must demonstrate a probability sufficient to undermine confidence in the outcome."  402 F.3d at 521 (internal quotation marks and citation omitted).  Acosta does not argue that the district court would have imposed a lesser sentence if it had known that the guidelines were advisory.  Although it did impose a sentence at the bottom of the guideline range, the district court did not give any indication that it would have imposed a lesser sentence if it had known that the guidelines were not mandatory.  Acosta has not shown that the district court would have imposed a different sentence if it had known that the guideline were advisory, and, thus, has failed to show that the sentence imposed was plain error.  Id.

CONVICTIONS AFFIRMED; SENTENCES VACATED IN PART; CASE REMANDED FOR RESENTENCING.